John G. Lawlor, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Disciplinary Board of the Supreme Court of Pennsylvania, Intervening Respondent.

Argued June 8, 1978, before Judges CRUMLISH, JR., BLATT and DiSALLE, sitting as a panel of three.

*Jay L. Fingeret,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, for respondent.

*John W. Herron,* for intervenor.

OPINION BY JUDGE CRUMLISH, JR., August 31, 1978:
John Gary Lawlor, Appellant, appeals a decision of the Unemployment Compensation Board of Review (Board) affirming a decision of the referee finding

him ineligible for unemployment compensation benefits under Section 402 of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802 (b)(1), which states, in relevant part:

> An employe shall be ineligible for compensation for any week—
>
> . . . .
>
> (b)(1)  In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . .

Appellant had been employed as an Assistant Disciplinary Counsel for The Disciplinary Board of the Pennsylvania Supreme Court for 18 months. On July 12, 1976, he submitted a letter of resignation, citing an "irreconcilable personality conflict" between him and his immediate supervisor, Edward A. Burkhardt (Burkhardt). He said that his relationship with Burkhardt became "intolerable" because the latter constantly made demeaning comments and "embarked on a campaign to undermine his confidence." The tension caused by this situation allegedly became so intense as to adversely affect Appellant's health. He testified that although he enjoyed his work, he had no alternative but to resign, and would leave as soon as he located another suitable position. The Chief Disciplinary Counsel, Allen B. Zerfoss (Zerfoss) expressed regret at Appellant's pending departure, and offered his assistance in locating other work. In fact, he wrote at least one letter of recommendation on Appellant's behalf.

During the week of July 5, 1976, an alleged physical confrontation between Appellant and Burkhardt took place wherein Appellant claims that Burkhardt took a swing at him. This incident called Zerfoss away from his home office to the Pittsburgh office to act once again as a conciliator. During this visit,

a conference with Zerfoss took place, the context of which is recalled by Appellant as follows:

> So on this Monday, the 12th of July, 1976, I believe, Mr. Zerfoss came into my office. He looked very serious. He sat down. I believe he didn't even ask me to recount what had happened, I just started. I told him what had happened the previous week. I said that it was just really getting out of hand. I mean it was really getting . . . it just wasn't real anymore. It was like a campaign. He said to me at that time, do you have a letter of resignation prepared, and I said no, and he said would you. . . . He said before we say anything more I would like you to prepare a letter of resignation. Alright? [sic] And finish out the end of this month, July. At that time he walked out of the office. . . .

Zerfoss, however, denied asking for Appellant's resignation, and recalls the July 12 conversation as follows:

> As I recall the event that . . . Mr. Lawlor had testified to on the Monday when I came out to Pittsburgh it was mentioned I think that I went into Mr. Lawlor's office . . . after I had first contacted . . . Mr. Burkhardt to get a situation report on what's the problem . . . and then I went into Mr. Lawlor and asked for his situation . . . and again I got the recounting of the intollerable [sic] situation and the effect that it was having on his equanimity and his . . . general outlook as to interest in the job and it's [sic] interferring [sic] with his production and interferring [sic] with his ability to concentrate. And at that particular time, as I recall, I said well it appears to me, Gary, that this is a decision that you have to make. *Either you*

> *have to be in a position to change your ways or*
> *to accept this supervision or you have to make*
> *a decision as to what you're going to do.* (Emphasis added.)

Appellant testified that between the time of his impending departure on July 30 and the submission of his letter of resignation on July 12, Burkhardt constantly checked on him to see if he was performing his duties. This aggravated Appellant to the point where he felt "deathly sick," and on the evening of July 22 he left a handwritten note on Burkhardt's desk which read:

> As of this date, I terminate all further association with this office.
>
> Please apply my remaining vacation days to the resignation date of July 30, 197[6] [sic].

The referee found that Appellant voluntarily terminated his employment because of his resistance to what he considered unreasonable, unwarranted and excessively harsh criticism of his work; that the record does not justify Appellant's resentment; that there is no medical evidence to support Appellant's claims of illness; and that continuing work was available to the claimant if he had desire to remain employed.

Appellant, relying on *Caperila Unemployment Compensation Case,* 200 Pa. Superior Ct. 357, 188 A. 2d 759 (1963), argues that Zerfoss's admonition that

> [e]ither you have to be in a position to change
> your ways or to accept the supervision, or you
> have to make a decision as to what you're go-
> ing to do.

amounted to a discharge.

In *Caperila, supra,* during a heated exchange between the claimant and employer, the employer stated:

> I am the boss . . . If you don't like it, there is
> the door.

200 Pa. Superior Ct. at 359, 188 A.2d at 760.

The court there held that the employer's statement was tantamount to a discharge.

Considering the circumstances of Appellant's termination, we do not believe that *Caperila, supra,* is controlling here. Absent here is the immediacy and the finality of the language found in *Caperila.* See *Rizzitano v. Unemployment Compensation Board of Review,* 32 Pa. Commonwealth Ct. 59, 377 A.2d 1060 (1977). Here, Appellant was merely admonished to develop a different attitude toward his supervisor or decide how or in what way he could by his own initiative make his working environment more pleasant. From this record, we discern no immediate threat to Appellant's job.

Voluntary termination of employment is, of course, a question of law, the determination of which is subject to our review. *See Unemployment Compensation Board of Review v. Fields,* 24 Pa. Commonwealth Ct. 347, 355 A.2d 836 (1976). Questions of credibility and the resolution of evidentiary conflicts, as we know beyond peradventure are for the Board, and not a reviewing court. *See Unemployment Compensation Board of Review v. Blouse,* 23 Pa. Commonwealth Ct. 66, 350 A.2d 220 (1976).

Appellant has the burden to shoulder his case of voluntary termination by demonstrating a cause of a necessitous and compelling nature. *See McGuire v. Unemployment Compensation Board of Review,* 24 Pa. Commonwealth Ct. 588, 360 A.2d 315 (1976). Appellant has clearly failed to sustain that burden here. He freely admits that he was unhappy with his working environment and that he, independent of other conditions, decided to resign. Had his resignation been "demanded" as he now contends, neither his July 12 or July 22 resignation letters disclose such a demand. Nor did he substantiate with medical evidence

386

allegations that the tension caused by his working environment resulted in physical illness. Unsupported statements that working conditions adversely affect an employee's health requiring him to terminate employment are not sufficient to establish a necessitous and compelling cause for such termination. *Penkola v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 326, 379 A.2d 890 (1977).

That the referee and the Board chose not to accept the testimony of a witness subpoenaed by Appellant was a decision wholly within their discretion, and we are precluded from considering it a valid issue within our scope of review. *See Blouse, supra.*

Finding no error of law or lack of substantial evidence, we must affirm. *See Unemployment Compensation Board of Review v. Ciotti*, 24 Pa. Commonwealth Ct. 373, 356 A.2d 368 (1976).

Accordingly, we

ORDER

AND Now, this 31st day of August, 1978, the decision of the Unemployment Compensation Board of Review is affirmed.