Jocelyn L. HOCKADAY, Petitioner,

v.

D. C. DEPARTMENT OF EMPLOY-
MENT SERVICES, Respondent.

No. 81–181.

District of Columbia Court of Appeals.

Argued Feb. 11, 1982.

Decided March 8, 1982.

Paul A. Quander, Jr., Washington, D. C., for petitioner.

N. Denise Wilson Taylor, Washington, D. C., for respondent.

Before MACK, FERREN and PRYOR, Associate Judges.

FERREN, Associate Judge:

This case presents two questions: (1) whether the Final Decision of the Department of Employment Services (DOES)[1] —that petitioner voluntarily terminated her employment without good cause connected with the work[2]—was made in accordance with law,[3] and (2) whether substantial evidence supports the Director's decision to disqualify her from benefits for seven weeks.[4] We answer both in the affirmative and accordingly sustain the Director's ruling.

I.

Petitioner, Jocelyn L. Hockaday, resigned from her position as a secretary with the Internal Revenue Service (IRS) effective April 5, 1980. On May 27, 1980, a DOES claims examiner found that petitioner voluntarily left her job because she felt she was overworked and underpaid. The examiner concluded that this was not "good cause connected with the work," D.C.Code 1980 Supp., § 46–310(a) (recodified as D.C. Code 1981, § 46–111(a)) and disqualified petitioner from receiving unemployment compensation benefits for ten weeks. On August 4, 1980, after a hearing at which petitioner testified, an Appeals Examiner issued findings of fact and conclusions of law. The Appeals Examiner found that increases in workload and decreases in staff adversely affected petitioner's health "to the point that she was required to secure medical treatment for an ulcer and nervous condition." He also found petitioner was unsuccessful in procuring a transfer or finding new work outside of the IRS. The Appeals Examiner concluded, however, that although petitioner's reasons for leaving were

---

**1.** The District of Columbia Department of Employment Services was formerly the District of Columbia Department of Labor. The latter title appears on some documents in the record.

**2.** *See* D.C.Code 1980 Supp., § 46–310(a) (recodified as D.C.Code 1981, § 46–111(a)), which provides:

> An individual who left his most recent work voluntarily without good cause connected with the work, as determined by the Board under regulations prescribed by it, shall not be eligible for benefits with respect to the week for which he first files for benefits and with respect to not less than six nor more than twelve consecutive weeks of unemployment which immediately follow such week. . . .

**3.** D.C.Code 1981, § 1–1510(a)(3)(A).

**4.** *See* D.C.Code 1981, § 1–1510(a)(3)(E).

"understandable," she did not have good cause for leaving in the "absence of medical advice to leave her work for job connected reasons of health." The Appeals Examiner reduced petitioner's disqualification from ten to eight weeks.

■ On January 23, 1981, the DOES Acting Director, in his Final Decision,[5] adopted the findings of fact and conclusions of law of the Appeals Examiner and further reduced petitioner's period of disqualification for benefits from eight to seven weeks. Hockaday filed a timely petition for review in this court. See D.C.Code 1978 Supp., § 46–312 (recodified as D.C.Code 1981, § 46–113); D.C.Code 1981, § 1–1510; D.C. App.R. 15(b).[6]

## II.

■ "An individual who left his most recent work voluntarily without good cause connected with the work" must be disqualified from receiving seven to thirteen weeks of unemployment benefits. D.C.Code 1980 Supp., § 46–310(a) (recodified as D.C.Code 1981, § 46–111(a)); note 2 supra. An employee's leaving is presumed to be involuntary, but this presumption is rebuttable. See Thomas v. District of Columbia Department of Labor, D.C.App., 409 A.2d 164, 171 (1979); Carpenter v. District Unemployment Compensation Board, D.C.App., 409 A.2d 175, 178 (1979); 18 D.C.R.R. § 301.1(a) (regulations promulgated before statutory amendment of good cause standard); 28

DCR 4965, 4976, § 4612.3 (effective Nov. 20, 1981).

As to the first issue, the examiner found that petitioner left her most recent work "voluntarily." Petitioner argues that her resignation was not voluntary because she was faced with the choice of quitting or sustaining physical and mental injuries. Assuming, solely for the sake of argument, that petitioner was faced with this choice, the examiner did not err in finding that her resignation, nonetheless, was voluntary within the meaning of the statute.

■ Voluntariness means "voluntary in fact, within the ordinary meaning of that term." 18 D.C.R.R. § 301.1(a)(1); see 28 DCR 4965, 4976, § 4612.2. That question must be determined by reference to whether the employee's action was compelled by the employer rather than based on the employee's volition. Here, petitioner's employer did not encourage, let alone coerce, petitioner to resign. Compare Thomas, supra (employee resigned when given the choice to quit or be fired; separation was tantamount to discharge) and Carpenter, supra (employee quit in lieu of being discharged for absenteeism; resignation was coerced by representations concerning pending or threatened personnel actions). Nor were working conditions themselves so manifestly detrimental to an ordinary worker's health that they were tantamount to a constructive discharge. Petitioner has not cited any case in which a claimant's resignation was held involuntary because it was based on health reasons.[7] The examiner did

5. We assume that the Employment Services Board (the Board) authorized the Acting Director to render the Final Decision. See D.C. Code 1980 Supp., § 46–313(a); D.C.Code 1973 § 46–315(b) (now governed by D.C.Code 1981, § 46–111(a) and 28 DCR 4965, 4975, § 4610 (effective Nov. 20, 1981)).

6. The Director rendered his Final Decision on January 23, 1981. Hockaday filed her petition on February 9, 1981. DES provides notice of its decisions by mail. 18 DCRR § 303.7(d) (repromulgated as 28 DCR 4965, 4976, § 4610.7) (Nov. 20, 1981). We assume that petitioner was not "given formal notice" of the decision, D.C.App.R. 15(b), until at least January 26, 1981, three days after the decision was ren-

dered and mailed, cf. D.C.App.R. 26(c) (granting three extra days for response where service of papers is made by mail). Hockaday's petition for review was, therefore, timely filed within the fifteen days required by court rule. See D.C.App.R. 15(b).

7. In Boogay v. Unemployment Compensation Bd., 46 Pa.Commw.Ct. 51, 53, 405 A.2d 1112, 1114 (1979), the court found that claimant, who feared that by continuing to work she would endanger her safety and health, had "cause of necessitous and compelling nature" to leave her job. Contrary to petitioner's argument, however, the court did not find that claimant's leaving was "involuntary."

not improperly find that petitioner left voluntarily.[8]

Having sustained this finding, we turn to the second issue: whether petitioner voluntarily left for "good cause connected with the work." D.C.Code 1980 Supp., § 46–310(a) (recodified as D.C.Code 1981, § 46–111(a)); see 18 D.C.R.R. § 301.1 (regulation promulgated before statutory amendment of good cause standard) (claimant bears burden of proof); 28 DCR 4965, 4976, § 4612.4 (effective Nov. 20, 1981) (claimant has "responsibility of presenting evidence sufficient to support a finding" in his or her favor).

Petitioner testified that the stress of an increased workload adversely affected her health. She brought medical substantiation of her ulcer and nervous condition to the hearing. The Appeals Examiner asked petitioner if her doctor recommended that she quit her job. Petitioner answered, "No, he didn't recommend that I leave the job but I knew it was getting too much for me." Petitioner testified that she sought a transfer as well as new work, and that her boss knew of her medical condition.[9]

The Appeals Examiner found that an increased workload caused petitioner's ulcer and nervous condition but that, "absent medical advice to leave her work" for health reasons, petitioner had not terminated her employment "for good cause connected with the work." The Acting Director adopted this conclusion in his Final Decision.

Petitioner argues that, in disqualifying her from receiving unemployment benefits, the examiners incorrectly applied the applicable statute and regulations. The Appeals Examiner concluded:

> Claimant voluntarily left her most recent work and a suitable period of disqualification must therefore be assessed unless her leaving was with good cause connected with the work. Although claimant's areas of dissatisfaction with her work situation are understandable, they did not reach the point where her leaving was justified in the absence of medical advice to leave her work for job connected reasons of health.

The Appeals Examiner accordingly interpreted the statute to mean that health reasons for voluntarily quitting a job would not amount to "good cause connected with the work" unless a claimant receives "medical advice to leave her work."

■ The Appeals Examiner did not purport to base his interpretation on Board regulations, an omission of analysis that complicates our review.[10] The only regulation on the books pertaining to the inquiry, 18 D.C.R.R. § 301.1, was adopted under D.C.Code 1973, § 46–310(a),[11] the statutory predecessor of the statute applicable here, D.C.Code 1980 Supp., § 46–310(a) (effective March 3, 1979) (recodified as D.C.Code 1981, § 46–111(a)). See note 2 supra. The Board did not adopt new regulations until November 20, 1981, over a year and a half after

---

**8.** Petitioner also argues that her resignation was involuntary because she resigned after IRS refused, allegedly in violation of ch. 36 of the Federal Personnel Manual, to reassign her despite her ulcer and nervous condition. This claim is without merit.

**9.** Petitioner's employer did not appear at the hearing or send a representative.

**10.** The Board always should write out the standard or test that governs its determination and should specifically refer to all applicable regulations. We need to know what standard the Board applied in order to fulfill our review function without usurping the Board's role. See Dietrich v. District of Columbia Bd. of Zoning Adjustment, D.C.App., 293 A.2d 470,

473 (1972); 3 K. Davis, Administrative Law Treatise, § 14.22 (2d ed. 1980).

**11.** D.C.Code 1973, § 46–310(a) provides in part:

> An individual who has left his most recent work voluntarily without good cause, as determined by the Board under regulations prescribed by the District of Columbia Council, shall not be eligible for benefits . . . .

18 D.C.R.R. § 301.1(a) provides in part:

> What is good cause for leaving will accordingly depend upon the facts in each case and will not be confined to causes connected solely with the employment itself. The test will be—what would the reasonable and prudent person in the labor market do in like circumstances.

the events at issue here.[12] Thus, it is unclear whether the old regulation applies, to the extent consistent with the narrower, amended statute, or the amended statute alone applies, absent implementing regulations.[13]

■■■ We need not resolve this question, however, for under either formulation the new statutory norm prevails, and the Final Decision conforms to it. This court must "defer to an agency's interpretation or construction of a statute which it is charged with administering unless it is 'unreasonable either in light of the record or prevailing law.'" *Thomas, supra* at 169 (citations omitted). The Director reasonably could find that an employee, leaving a job for health reasons, does not have good cause connected with the work "in the absence of medical advice to leave her work for job connected reasons of health." It is not unreasonable to expect an employee to provide such objective, professional verification;[14] otherwise, there would be no way for the Director to distinguish between real and imagined health problems attributable to the work.[15]

### III.

■■■ This court must reverse the Final Decision of the Director if his "findings and conclusions" are "unsupported by substantial evidence in the record of proceedings before the court." D.C.Code 1981, § 1–1510(a)(3)(E); *see Washington Post Co. v. District Unemployment Compensation Bd.,* D.C.App., 377 A.2d 436, 439 (1977); *Wallace v. District Unemployment Compensation Bd.,* D.C.App., 294 A.2d 177, 178–79 (1972). The term "substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Washington Post Co., supra* at 439 (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Wallace, supra* at 179 (same). We may not substitute our judgment, however, for the Director's if his findings are supported by substantial evidence and his decision follows from the findings. *See Washington Post Co., supra* at 439; *Stewart v. District of Columbia Board of Zoning Adjustment,* D.C.App., 305 A.2d 516, 518 (1973).

■■■ The record contains substantial evidence to support the Director's decision that petitioner left her employment voluntarily without good cause connected with the work. D.C.Code 1980, § 46–310(a) (recodified as D.C.Code 1981, § 46–111(a)). At the hearing petitioner stated that she resigned for health reasons but had not been advised to do so by her doctor. Petitioner's testimony supports the Director's determination.

**12.** 28 DCR 4965, 4976, § 4612.5 (effective November 20, 1981) provides:

The circumstances which constitute good cause connected with the work shall be determined by the Director based upon the facts of each case. The test shall be, "what would a reasonable and prudent person in the labor market do in the same circumstances?"

Section 4612.5 prescribes virtually the same test as its predecessor, 18 D.C.R.R. § 301.1(a), although it is applicable to a narrower statutory formula, "good cause *connected with the work*" (emphasis added). *See* note 2 *supra.*

**13.** Petitioner does not argue that the Board could not apply the statute absent implementing regulations.

**14.** Petitioner cites *Deiss v. Unemployment Compensation Bd.,* 475 Pa. 547, 555, 381 A.2d 132, 136 (1977) to support her claim that there is "no reason to require claimant to prove that [she] was advised to quit [her] job" in order to

qualify for full unemployment benefits. The court in *Deiss* interpreted a Pennsylvania statute which required that the claimant prove he or she resigned for a "cause of necessitous and compelling nature", *id.* at 549, 381 A.2d at 133, not for "good cause *connected with the work,* D.C.Code 1980 Supp., § 46–310(a) (recodified as D.C.Code 1981, § 46–111(a)) (emphasis added). The Board need not adopt this Pennsylvania standard.

**15.** The position taken by the Director here is similar to the position set forth in the new regulation, effective November 20, 1981, which deals specifically with voluntary termination for health reasons. Regulation 28 DCR 4965, 4977 § 4612.7(e) provides that good cause connected with the work includes:

Illness or disability caused or aggravated by the work; Provided, that claimant has previously supplied the employer with a medical statement; . . .

In summary, the Director's determination that petitioner voluntarily left her job, but not for good cause connected with the work, D.C.Code 1980 Supp., § 46–310(a) (recodified as D.C.1981, § 46–111(a)), was made in accordance with law. D.C.Code 1981, § 1–1510(a)(3)(A).

*Affirmed.*