*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-AA-1195

SARAH PARKER, PETITIONER,

V.

MCCORMICK & SCHMICK'S SEAFOOD, RESPONDENT.

On Petition for Review of an Order of
the Office of Administrative Hearings
(DOES-1317-17)

(Submitted June 12, 2019                      Decided August 29, 2019)

*Jonathan H. Levy* was on the brief for petitioner.

Before BECKWITH and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*:    Petitioner Sarah Parker's application for unemployment benefits was denied by a District of Columbia Department of Employment Services ("DOES") examiner, a decision that was affirmed by an Office of Administrative Hearings ("OAH") administrative law judge ("ALJ") following a hearing. Before this court, petitioner challenges the ALJ's finding that she voluntarily quit her job without good cause. Respondent did not file a responding brief. For the reasons discussed below, we reverse and remand for

further proceedings consistent with this opinion.

## I.

Petitioner worked as a full-time server at McCormick & Schmick's Northwest D.C. location from August 7, 2013, to March 7, 2017. On March 7, petitioner informed her manager that she was quitting, effective immediately. Petitioner said that she quit because of her dissatisfaction with the restaurant's tip pooling policy.

Subsequent to quitting, petitioner applied for unemployment benefits. The District of Columbia Unemployment Compensation Act specifies that an applicant will be disqualified from receiving unemployment benefits if she is found to have voluntarily left her employment without good cause, and a D.C. DOES claims examiner found that petitioner's quitting for dissatisfaction with her employer's tip pooling policy did not constitute good cause. Petitioner appealed the claims examiner's decision.

The ALJ presided over a hearing on September 5, 2017. It was not contested that petitioner voluntarily quit, as petitioner testified, "I did [] voluntarily

leave my place of employment and it was based on the fact that as servers we make our living on tips and the company took a portion of those tips for our support staff." Petitioner elaborated that her employer "continued to take that money when we did not have said support staff such as a busser or a host and I asked many times to my bosses, to their bosses, why – where does that money go? I had no help." Petitioner said that this tip pooling policy was enforced several days a week during the slower summer period, but at other times of the year it would occur once a week or once a month. Petitioner did not keep her concerns to herself as she testified, "I mentioned it to four or five people all up and down the line and nobody ever really gave me an answer and I felt more and more frustrated and it more and more felt like theft to me." In affirming the claims examiner's decision, the ALJ concluded in a written order issued on September 25, 2017, that petitioner failed to establish good cause for her voluntary decision to leave her employment. This appeal followed.

## II.

Our review of a denial of unemployment benefits is limited – although we generally defer to the agency's construction of a controlling statute or regulation, we must reverse such a decision if the "findings and conclusions are unsupported

by substantial evidence in the record of proceedings before the court." *Hockaday v. District of Columbia Dep't of Emp't Servs.*, 443 A.2d 8, 12 (D.C. 1982). Substantial evidence requires more than a scintilla – "it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Washington Post Co. v. District Unemployment Comp. Bd.*, 377 A.2d 436, 439 (D.C. 1977).

For voluntary leaves from employment, the claimant bears the burden of presenting sufficient evidence to support a good cause reason for leaving. 7 DCMR § 311.4 (2017). "The circumstances which constitute good cause connected with the work shall be determined by the Director based upon the facts in each case. The test shall be, 'what would a reasonable and prudent person in the labor market do in the same circumstances?'" 7 DCMR § 311.5 (2017); *see also Kramer v. District of Columbia Dep't of Emp't Servs.*, 447 A.2d 28, 30 (D.C. 1982). Examples of good cause include failure to provide remuneration for employee services. 7 DCMR § 311.7 (2017).

A tipped employee is "any employee engaged in an occupation in which [s]he customarily and regularly receives more than $30 a month in tips." 29

U.S.C. § 203(t) (2012).[1]  There is no debate that petitioner here qualifies as a tipped employee.  Tip pooling arrangements are permitted among "employees who customarily and regularly receive tips."  *Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 300 (6th Cir. 1998) (quoting 29 U.S.C. § 203(m) (2012)).  Identifying which employees customarily and regularly receive tips is determined on a shift basis and is not based on employees' titles.  *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 192 n.11 (5th Cir. 2015).

## III.

On appeal, petitioner argues that it was reasonable for her to quit her job as a server based on her concerns with her employer's tip pooling policy.  In contrast to the petitioner in *Beynum v. Arch Training Ctr.* whose testimony about voluntarily leaving employment at the vocational training facility for good cause was unclear, petitioner here provided clear justification and reasoning for her decision to leave her position as a server.  998 A.2d 316, 319-20 (D.C. 2010).  Tip pooling concerns are not novel.  *E.g.*, *Montano*, 800 F.3d at 186 (factual issue regarding whether

---

[1]  This tipping standard is a national standard that also accounts for local variation.  *See* U.S. DEPARTMENT OF LABOR, *Tips*, https://www.dol.gov/general/topic/wages/wagestips (last visited July 30, 2019); D.C. Code § 32-1003(g)(3) (2019 Repl.); 7 DCMR § 903.1 (2017).

restaurant barista/coffeeman would customarily and regularly receive tips as part of tip pooling agreement precluded summary judgment); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550-51 (6th Cir. 1999) (restaurant tip pooling scheme deemed improper for shifts where salad preparers were included in tip pool, as such preparers did not directly interact with patrons and duties focused on food preparation and kitchen support); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979) (restaurant failed to meet its burden of demonstrating a valid tip pooling agreement); *Stephens v. Farmers Rest. Grp.*, 291 F. Supp. 3d 95, 114 (D.D.C. 2018) (motion for class certification granted as servers made sufficient showing that tip pooling policy violated the law because servers were required to share tips with other employees who do not customarily and regularly receive tips).

Similarly, while the ALJ credited petitioner's testimony that she quit her job because of her tip pooling policy concerns, the ALJ failed to explain why petitioner's objection did not constitute good cause for voluntarily leaving her job. *See Cruz v. District of Columbia Dep't of Emp't Servs.*, 633 A.2d 66, 71-72 (D.C. 1993). In *Cruz*, we reversed and remanded the hearing examiner's decision because the hearing examiner did not grapple with petitioner's cited good cause reasons, including the employer's financial status and the workplace environment,

making "no attempt at the hearing to elicit facts relevant to the complainant's allegations as to the situation existing at [the employer]." *Id.*

Although the ALJ elicited facts about petitioner's reason for voluntarily leaving her employment, the ALJ failed to explain why her reasoning did not constitute good cause. We conclude that the ALJ's finding that petitioner left without good cause is unsupported. We further conclude as a matter of law that petitioner could reasonably leave her position based on her objection to her employer's enforcement of the tip pooling policy during shifts when other employees who customarily and regularly receive tips were not working. A reasonable and prudent person in petitioner's position would likely leave his or her employment as a server when faced with the enforcement of the tip pooling policy during those shifts, so reversal is appropriate here.

Because we reverse on the grounds that petitioner's reason for leaving constituted good cause, we do not reach petitioner's argument that her employer's conduct was illegal. *See Ware v. District of Columbia Dep't of Emp't Servs.*, 157 A.3d 1275, 1277 (D.C. 2017).

For the foregoing reasons, we reverse the ALJ's decision and remand the case to DOES for further proceedings consistent with this opinion.


*So ordered.*